## STATE BOARD OF LAW EXAMINERS v. LEANDER F. SHELDON
(No. 1725; January 25, 1932; 7 Pac. (2d) 226)

RINER, Justice.

These proceedings were instituted by a complaint for disbarment filed by the complainant, the State Board of Law Examiners, in the District Court of Natrona County, against the respondent, Leander F. Sheldon, an attorney at law admitted to practice in the courts of this state and a resident of Natrona County at the time of the transactions in consequence of which the complaint has been preferred. The respondent entered his appearance, but filed no answer to the complaint. The matter was heard by two district judges, to whom was presented, in support of complainant's charges, a transcript of the sworn testimony of sundry witnesses and other evidence taken before a notary public and the Grievance Committee of Natrona County Bar Association. This transcript, together with a stipulation of the parties authorizing its use in the instant matter, constitutes practically all the evidence in the case. The judges presiding at the hearing have transmitted here a

recommendation (Laws of 1925, c. 51, § 3) that the respondent be disbarred.

No objection to this recommendation (Supreme Court Rule 40) has been interposed by respondent, although the papers on file herein disclose that he has been duly notified with a copy of the recommendation aforesaid (Supreme Court Rule 39) ; neither has he filed any brief. Oral statements concerning the matter were, however, submitted both by counsel who represented respondent before the Grievance Committee above mentioned, and by one of the members of that committee.

The substance of the charges made against respondent is, that on or about May 16, 1929, one William W. Colliday employed him as counsel in connection with the former's arrest on that day by the police officers of the city of Casper, Wyoming, who were acting on behalf of the Sheriff of Converse County; that respondent falsely, willfully and intending to deceive his client, told him that he was charged by the authorities of Converse County with the crime of assault with intent to commit rape; that respondent also informed his client that he could settle the matter out of court by bribing officers of the law to release him; that said Colliday, relying upon respondent's statements and advice, thereupon gave the latter $1100 to be so used by him; that thereafter respondent falsely and with intent to deceive his client, advised him that respondent had settled everything and secured his release; that thereupon respondent demanded of and received from said Colliday an additional sum of $400, claiming the same as his fee for securing his client's release from custody; that as a matter of fact, Colliday was never charged with any offense and had been detained by the Casper police officials merely as a witness and was to be released the following morning—this, the true situation of his client, being well known to respondent when he obtained the $1500 received by him as aforesaid from the said Colliday; that respondent converted to his own use the sum of $1500 as a fee for

securing this pretended release of his client, having failed to render any adequate service to him therefor.

There is substantial evidence in the record tending to sustain these charges. Respondent, while admitting that he received $1500 from his client, denies that he told him that the $1100 was to be used for bribing the officers detaining him, but claims he demanded it as a retainer. When asked before the Grievance Committee aforesaid why he charged his client $1100, he told his own counsel that the reason he charged that amount was: "I figured that Colliday could well afford to pay a big fee, and I started to figure what I owed in town and I figured up $1069, and I thought I might as well make it $1100 even." Relating how he came to exact $400 more from his client, after receiving the $1100, respondent further answered his counsel's questions:

"Q. What conversation did you have with Colliday as to the payment of any further fee?
A. He says, 'Is that all I owe you?' and I figured that if he felt that way about it there was no reason why he shouldn't be charged some more, so I told him $500.00.
Q. What did he say to that?
A. He leaned back and whistled, he said, 'That's an awful lot, $1500.00.' I said, 'Well, its worth it, I wouldn't be sitting in your boots for a lot more money than that, Colliday.'
Q. What did he say?
A. He said, 'I'll give you $400.00 to make it $1500.00 even.' I said, 'All right.'"

Without further detail it may be said that the record establishes clearly that respondent deliberately deceived his client by willful misrepresentations of the true situation in which the latter stood, and that by means of these misrepresentations respondent extorted from him a large sum of money, for whose payment there was no justification whatsoever.

Under our state law (§ 1, c. 26, Laws of 1927) and the rules governing admission of attorneys to the Bar of this State (Rule 4), applicants for admission must be persons

of good moral character. When that character is lost, after admission, it follows that the right to serve the courts as their sworn officers and the public as their trusted representatives should also be lost. The relation of counsel to their clients and to the courts demands that they be persons of integrity. If, in their dealings with their clients, they are guilty of fraud involving moral turpitude, they are not persons of good moral character.

The conduct of respondent has been not only unprofessional, but dishonest. He has been guilty of obtaining money under false pretenses through taking advantage of the client who employed him. His misrepresentations were made to his client for the purpose of inducing him to part with money, which respondent applied to his own necessities. Such conduct would be reprehensible in any person. It is especially so on the part of one who invites the confidence of the public because he holds a certificate which, under our state laws, authorizes him to practice as an attorney at law. That certificate is not only an official assurance that he has the ability to represent properly his clients, but also that he has a good moral character which will justify the confidence of those who employ him, relying upon his integrity and his fidelity to their interests. When he abuses that confidence and betrays those interests, he no longer possesses the character necessary to entitle him to be held out to the world as a lawyer to whom clients may unreservedly entrust either their rights or their business.

The record discloses that respondent has returned a portion of the money obtained as above related. Apparently, however, this was not done until pressure was applied by the findings of the Grievance Committee of the local Bar Association against him. It is suggested that these facts should not be overlooked in the determination of this case. They are not. But neither may it be overlooked, as said by the Supreme Court of Illinois, in People ex rel. Cutler v. Ford, 54 Ill. 520, that:

"The lawyer assumes high duties, and has imposed upon him grave responsibilities. He may be the means of much good or much mischief. Interests of vast magnitude are entrusted to him; confidence is reposed in him; life, liberty, character and property should be protected by him. He should guard, with jealous watchfulness, his own reputation, as well as that of his profession.

"The defendant has neglected his duties, betrayed confidence, practiced deceit, and turned recreant to virtue. He has not alone degraded himself—he has tarnished the fair fame of a profession always esteemed honorable."

The recommendation of the trial judges herein must be affirmed, and the name of respondent should be stricken from the roll of attorneys authorized to practice law in this state.

KIMBALL, C. J., and TIDBALL, District Judge, concur.